Law Clerk's Copy

5
copy

FILED
HARRISBURG

JUL 16 2001

MARY E. D'ANDREA, CLERK
Per _____
DEPUTY CLERK

MCC:MEH:all/2001V00528

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

KEITH CROSBY,                          :
              Petitioner               :    Civil No. 1:CV-00-2211
                                       :
              v.                       :    (Judge Kane)
                                       :
MICHAEL ZENK,                          :
              Respondent               :

### RESPONSE TO PETITION FOR WRIT OF HABEAS CORPUS

This is a habeas action brought by Keith Crosby, an inmate confined at the Allenwood Federal Correctional Institution in White Deer, Pennsylvania ("USP Allenwood). Crosby challenges the 1993 revocation of his parole, claiming that (1) the United States Parole Commission ("Commission") could not find Crosby to have committed a new crime in the absence of a new conviction for the charged offense, because findings must be made on the basis of proof beyond a reasonable doubt as required by the due process clause; and (2) the Commission's finding lacks a rational basis in the record as the Commission relied on "fabricated information" in finding that Crosby violated the conditions of parole by committing a bank robbery, and thus, Crosby is innocent of the charge. The government argues that findings of fact at a parole revocation hearing are not required to be made by the

beyond a reasonable doubt standard, the Commission's decision cannot be presented to this Court for a *de novo* determination of factual issues, and furthermore, this Court has already ruled that the Commission's decision in this case has a rational basis in the record.

### Statement of Facts

Crosby was sentenced on May 14, 1986, by the United States District Court for the District of Maryland, at No. JH-85-0608, to a 5-year nonparolable term for use of a firearm during a crime of violence and a 20-year consecutive parole-eligible term for bank robbery and related offenses. Exh. 1, p.1. The Commission paroled Crosby on February 2, 1993, and he was to remain under parole supervision until December 2, 2010. Exh. 2, p.1.

On August 24, 1993, the Commission issued a warrant charging Crosby with violating the conditions of parole by committing armed bank robberies, associating with persons engaged in criminal conduct and administrative violations. Exh. 3, pp.1-2. The warrant was issued based on information provided by the United States Probation Officer charged with supervising Crosby. The warrant application included a declaration from an agent of the Federal Bureau of Investigation that a confidential informant had implicated Crosby in bank robberies. Exh. 4, p.4.

2

Crosby was arrested on the Commission's warrant, and the Commission provided him with a revocation hearing on December 1, 1993. Exh. 5. Special Agent Glen Graves of the Federal Bureau of Investigation appeared as an adverse witness, and Rodney Scott, one of three participants in a series of bank robberies, also appeared to testify as an adverse witness. <u>Id.</u> at 1. Both of these witnesses testified that Crosby had been involved in bank robbery. Agent Graves' testimony was based on information he had received from confidential informants implicating Crosby (<u>Id.</u> at 1-2), and Mr. Scott testified as one of the participants in the robberies that Crosby had participated in one robbery. <u>Id.</u> at 2. In addition, Agent Graves testified that during a consent search of the home of Tony Wilder, pieces of paper were found showing the telephone number of Crosby's grandmother (at whose house Crosby was staying). <u>Id.</u> at 1. Accordingly, the Commission found that Crosby had committed the charged violation of bank robbery. <u>Id.</u> at 3. The Commission revoked Crosby's parole, and ordered that Crosby serve 120 months to September 1, 2003, a date above his reparole guideline range of 60-72 months. Exh. 6. The Commission's reasons for the decision above the guideline range were as follows:

> After review of all relevant factors and information presented, a decision above the guidelines appears warranted because you are a more serious risk than

3

indicated by your salient factor score in that you have
a history of assaultive behavior as evidenced by your
convictions for assault with intent to rob (1973); Bank
Robbery (1978); and Bank Robbery (1986).  You were on
parole for approximately two months when you became
involved in a new robbery offense.  When apprehended by
the U.S. Marshal you were found to be in possession of
a handgun.

Exh. 6, p.2.

This decision was affirmed on administrative appeal.
Exh. 7.   The National Appeals Board reviewed at length the
evidence relied upon by the Commission in support of its findings
of fact.  Id.

After a statutory interim hearing in December, 1995,
the Commission ordered no change in its previous order.  Exh. 8.
This decision was affirmed on administrative appeal.   Exh. 9.
After a second statutory interim hearing in December, 1997, the
Commission ordered that Crosby serve an additional 12 months, to
August 31, 2004, as a sanction for three separate findings by the
disciplinary hearing officer that he had used morphine.  Exh. 10.
Crosby did not administratively appeal this decision.

In February, 1998, it came to the Commission's
attention that Crosby had sent the Commission a letter requesting
reopening of his case, which had apparently been filed without
being reviewed.   Accordingly, the Commission considered and

4

denied Crosby's request for reopening of his case pursuant to 28 C.F.R. §2.28(a) (new favorable information).  Exh. 11.

Crosby presented an affidavit from Rodney Scott stating that Scott had testified falsely at Crosby's revocation hearing when he testified to Crosby's involvement in a bank robbery. Scott stated that he had "made the above untrue statements based on what I thought the [hearing] examiner wanted to hear."  Exh. 12.  The Regional Commissioner made a determination that this affidavit did not merit reopening of Crosby's case.  The Commission found Scott's testimony at the revocation hearing more reliable than his later recantation because Scott recanted only his testimony at the revocation hearing, but had also told the Federal Bureau of Investigation that he and Crosby had committed the robbery, and because other evidence (Crosby's phone number at Wilder's house) linked Crosby to Scott and Wilder.  Exh. 11., pp. 1-2.

On July 22, 1997, Crosby filed a petition pursuant to 28 U.S.C. §2241 in this Court at No. 97-CV-1122. Exh. 15, p.1. The issues raised by Crosby in this petition are virtually identical to the issues raised in the instant petition.  See Crosby v. True, M.D. Pa. No. 1:CV-97-1112, Memorandum and Order of Judge Yvette Kane (February 10, 1999)(attached).  On February

5

10, 1999, this Court denied Crosby's petition.  Id.;  Exh. 15,
p.4.

Crosby received his most recent statutory interim
hearing on December 6, 1999.  Exh. 13.  The Commission ordered no
change in its prior decision that Crosby serve to August 31,
2004.  Exh. 14.  Crosby did not take an administrative appeal of
this decision.

## Questions Presented

1.  Should Crosby's petition be denied as this Court has
    already ruled that the Commission's decision in this
    case has a rational basis in the record?

2.  Should Crosby's due process claim be denied in that
    findings of fact at a parole revocation hearing are not
    required to be made by the beyond a reasonable doubt
    standard?

3.  Should Crosby's claim that the Commission's finding
    lacks a rational basis in the record be denied as the
    Commission's decision cannot be presented to this Court
    for a de novo determination of factual issues?

Suggested answers in the affirmative.

## Argument

I.  **CROSBY'S PETITION SHOULD BE DENIED AS THIS COURT HAS
    ALREADY RULED THAT THE COMMISSION'S DECISION IN THIS
    CASE HAS A RATIONAL BASIS IN THE RECORD.**

On July 22, 1997, Crosby filed a §2241 petition, at No.
1:CV-97-1122, which raised claims virtually identical to claims
raised in the instant petition.   In it's Memorandum, the
Honorable Yvette Kane stated:

Crosby asserts that he is entitled to relief on the ground that his "PAROLE REVOKED BASED ON FABRICATED INFORMATION IN VIOLATION OF PETITIONER'S FIFTH AMENDMENT." He relies on the affidavit of Scott, which essentially recants his earlier testimony at the December 5, 1993 parole revocation hearing, as well as the affidavit of Wilder. Respondent contends that Crosby is not entitled to habeas corpus relief because the Commission's determination as to the credibility of witnesses is not subject to judicial review. In his reply, Crosby argues that the Commission's decision is based on insufficient evidence of guilty for crimes he was never charged with or convicted of.

Crosby v. True, M.D. Pa. No. 1:CV-97-1112, Memorandum and Order of Judge Yvette Kane (February 10, 1999)(footnote omitted)(attached). In denying Crosby's petition, the Court stated, "[b]ased upon a careful review of the record, the court is of the view that the Commission's decision has a rational basis in the record. Accordingly, Crosby's petition will be denied." Id. This Court has already ruled on Crosby's claims in the instant petition and thus, this petition should be denied.

## II. CROSBY'S DUE PROCESS CLAIM SHOULD BE DENIED IN THAT FINDINGS OF FACT AT A PAROLE REVOCATION HEARING ARE NOT REQUIRED TO BE MADE BY THE BEYOND A REASONABLE DOUBT STANDARD.

Crosby's due process claim is without merit. It is well settled law that findings of fact at a parole revocation hearing are not required to be made by the beyond a reasonable doubt standard. As the Supreme Court held in Morrissey v.

<u>Brewer</u>, 408 U.S. 471, 488 (1972), the purpose of the revocation hearing is to "lead to a final evaluation of any contested relevant facts and consideration of whether the facts as determined warrant revocation." The Court held that a parolee must, as a matter of due process, "have an opportunity to be heard and to show, if he can, that he did not violate the conditions, or, if he did, that circumstances in mitigation suggest that the violation does not warrant revocation." <u>Id.</u> The Court further noted that:

> We emphasize that there is no thought to equate this second stage of parole revocation to a criminal prosecution in any sense. It is a narrow inquiry; the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial.

408 U.S. at 489. Finally, the Court set out what procedures due process requires in revocation hearings: written notice of the charges, disclosure of evidence, opportunity to be heard in person and to present evidence, conditional right to confront and cross-examine adverse witnesses, neutral and detached hearing body and written statement of evidence relied upon and reasons for revoking parole. <u>Id.</u> In the seminal case regarding what process is due in parole revocation cases, the Court did not specify findings by the beyond a reasonable doubt standard. The

Commission's regulations, consistent with these cases, provide that findings of fact are made by the preponderance of the evidence standard.   28 C.F.R. §2.19(c).

Courts have consistently held that the Commission may find that a parolee violated the conditions of parole notwithstanding dismissal, or even acquittal, of new criminal charges, precisely because revocation findings are made by the preponderance of the evidence standard rather than the beyond a reasonable doubt standard.   See, e.g., Rusher v. Arnold, 550 F.2d 896, 899 (3rd Cir. 1977)(inability of government to meet burden of proof in criminal case is no bar to proceeding employing lesser burden, for example probation revocation); Standlee v. Rhay, 557 F.2d 1303 (9th Cir. 1977)(Parole Commission may find parole violation notwithstanding acquittal of criminal charge); Whitehead v. U.S. Parole Commission, 755 F.2d 1536 (11th Cir. 1985)(same).

The rationale for the lesser standard of proof is that a person is only in the community conditionally, and in lieu of time in prison on their original sentence.   Crosby received a 25-year sentence and was released to parole conditioned upon good

conduct in the community.  If Crosby is found to have committed a violation of the conditions of parole, he is returned to custody to continue serving his original sentence, which he received after being found guilty beyond a reasonable doubt.

The case relied upon by Crosby, Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348 (2000), is not to the contrary. That case held that findings of fact which increase the penalty for a crime beyond the prescribed statutory maximum must be proved beyond a reasonable doubt (not made by the judge during the sentencing phase, by the preponderance of the evidence).  The Commission's findings in Crosby's case do not increase the penalty for his crime beyond the statutory maximum; at most, the Commission can, by revoking his parole, require that he serve the entire sentence originally imposed (25 years), of which he would necessarily serve less through good time deductions.  See 18 U.S.C. §4210.  Apprendi has nothing to do with Crosby's situation as he is not a criminal defendant entitled to the panoply of due process rights attending a criminal trial.  He is a convicted felon and federal parolee whose due process rights are limited to those explicated by the Court in Morrissey, supra.

II.   CROSBY'S CLAIM THAT THE COMMISSION'S FINDING LACKS A RATIONAL BASIS IN THE RECORD SHOULD BE DENIED AS THE COMMISSION'S DECISION CANNOT BE PRESENTED TO THIS COURT FOR A *DE NOVO* DETERMINATION OF FACTUAL ISSUES.

Crosby's claim that the Commission's finding that he committed a bank robbery lacks a rational basis in the record is also without merit.  Crosby's challenge to the Commission's decision cannot be presented to this Court for a <u>de novo</u> determination of factual issues.  <u>Kramer v. Jenkins</u>, 803 F.2d 896, 901 (7th Cir. 1986); <u>Billiteri v. United States Board of Parole</u>, 541 F.2d 938, 943-44 (2nd Cir. 1976).  Rather, the scope of review is limited to determining whether the Parole Commission had "any evidence" to support its finding:

> Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence.  Instead, the relevant question is whether there is any evidence in the record that could support the conclusions reached . . .

<u>Superintendent v. Hill</u>, 472 U.S. 445, 454 (1985); <u>Marshall v. Lansing</u>, 839 F.2d 933, 946 (3rd Cir. 1988); <u>Solomon v. Elsea</u>, 676 F.2d 282, 290 (7th Cir. 1982).

As the United States Court of Appeals for the Third Circuit stated in <u>Zannino v. Arnold</u>, 531 F.2d 687 (3rd Cir. 1976):

> The inquiry is not whether the Board is supported by the preponderance of the evidence, or by substantial

11

evidence; the inquiry is only whether there is a rational basis in the record for the Board's conclusions embodied in its statement of reasons.

531 F.2d at 691; accord, Campbell v. U.S. Parole Commission, 704 F.2d 106, 109-10 (3rd Cir. 1983); Bridge v. U.S. Parole Commission, 981 F.2d 97, 100 (3rd Cir. 1992).

There is clearly a rational basis in the record for the Commission's finding in this case. Specifically, Agent Graves testified at the revocation hearing that a confidential informant had told him Crosby had participated in several bank robberies. Graves also testified that when Scott was arrested, he stated that Crosby had participated in the April 26, 1993, robbery. Graves also testified that the video from the robbed bank showed an individual who looked similar to Crosby carrying a revolver and that during a search of Wilder's home, papers with the telephone number of Crosby's residence were found. Finally, Graves testified that a confidential informant told him Crosby had admitted to the informant, prior to the arrest of Scott and Wilder, that he had participated in a robbery. At the hearing, Scott testified that Crosby had participated in the April 26, 1993, robbery. Exh. 5, pp. 1-2. Against this substantial evidence of Crosby's having committed the robbery, Crosby offered

his denial. There was clearly a rational basis in the record for the Commission's finding that Crosby committed the charged bank robbery.

The subsequent recantation by Scott does not change this balance. Scott's affidavit only recants his testimony at the hearing (on the questionable ground that he was only telling the examiner what he wanted to hear). Scott did not recant his statement to the Federal Bureau of Investigation agent, which was the same; namely, that Crosby committed the robbery. Given the weight of other evidence indicating that Crosby committed the robbery, the Commission is not required to credit Scott's late recantation. Furthermore, even if the Commission did credit the affidavit, it only removes a part of Scott's testimony. His statement to the Federal Bureau of Investigation is unaffected by the affidavit. Accordingly, there remains, even after Scott's affidavit (and regardless of whether or not the Commission credits it), a rational basis in the record for the Commission's finding of fact. Therefore, that finding should not be disturbed by this Court. See generally, Moore v. Dubois, 848 F.2d 1115 (10th Cir. 1988)(recanted testimony may be considered by the Commission); Williams v. U.S. Parole Commission, 617 F. Supp. 470

(M.D. Pa. 1985)(Commission properly considered wife's initial statement to police, notwithstanding later recantation).

### Conclusion

       For the foregoing reasons, the petition for habeas corpus should be denied and the case dismissed.

                               Respectfully submitted,

                               MARTIN C. CARLSON
                               United States Attorney

                               MATTHEW E. HAGGERTY
                               Assistant U.S. Attorney
                               ANITA L. LIGHTNER
                               Paralegal Specialist
                               228 Walnut Street, 2nd Floor
                               P.O. Box 11754
                               Harrisburg, PA  17108-1754
                               717/221-4482

Date:  July 16, 2001

14

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

KEITH CROSBY,                         :
            Petitioner               :    Civil No. 1:CV-00-2211
                                     :
            v.                       :    (Judge Kane)
                                     :
MICHAEL ZENK,                         :
            Respondent               :

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion to be competent to serve papers.

That this 16th day of July, 2001, she served a copy of the attached

### RESPONSE TO PETITION FOR WRIT OF HABEAS CORPUS

by placing said copy in a postpaid envelope addressed to the person hereinafter named, at the place and address stated below, which is the last known address, and by depositing said envelope and contents in the United States Mail at Harrisburg, Pennsylvania.

ADDRESSEE:

Keith Crosby
Reg. No. 29802-066
FCI Allenwood
P.O. Box 2000
White Deer, PA 17887

ANITA L. LIGHTNER
Paralegal Specialist

ce: USPC
BB

FILED
HARRISBURG

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

FEB 1 0 199

MARY E. D'ANDREA
Dor
Deputy Cle

KEITH CROSBY,                    :

          Petitioner            :

     v.                          :          CIVIL NO. 1:CV-97-1112

PAGE TRUE,                       :          (Judge Kane)

          Respondent            :

### M E M O R A N D U M

Before the court is Keith Crosby's <u>pro se</u> petition for writ of

habeas corpus pursuant to 28 U.S.C. § 2241.  The matter is ripe for

disposition and for the reasons which follow, the petition will be

denied.

### Background

The record discloses the following factual background.  In

May, 1986, Crosby was sentenced to a term of imprisonment of

twenty-five (25) years for bank robbery and use of a firearm during

a crime of violence.  (Doc. 1, Pet., Ex. C at 1; Doc. 18, Resp. at

1.)  On February 2, 1993, the United States Parole Commission (the

Commission) ordered him released on supervised parole until

December 2, 2010.  (Doc. 18, Resp., Ex. 1.)  Thereafter, in a

letter dated August 10, 1993, Crosby's probation officer informed

the Commission that he had violated the conditions of his parole

and recommended that a violator's warrant for his arrest be issued.

(<u>Id.</u>, Ex. 2.)  Specifically, the Commission was advised that

Crosby, who was subject to a drug aftercare condition of parole,

had recently twice tested positive for drugs, failed to make six drug treatment appointments, and was implicated, according to information obtained by the Federal Bureau of Investigation (FBI), in a number of bank robberies between April and July, 1993.  (Id.)

As a result Crosby was charged with violating the conditions of his parole as follows: committing armed bank robbery; failing to notify his probation officer of his criminal involvement; associating with persons having a criminal record and/or engaged in criminal activity; use of dangerous and habit forming drugs; failing to keep scheduled appointments required pursuant to his special parole condition of drug aftercare in an warrant application dated August 24, 1993.  (Id. Ex. 3)  He was later charged with the additional violation of unauthorized possession of a firearm.  (Id. Ex. 4.)

Following Crosby's arrest, he was given a preliminary interview on September 3, 1993 during which he admitted to the drug and special aftercare program violations but denied all other charges.  (Id. Ex. 5)  In a letter dated October 5, 1993, he was notified that probable cause had been found on the following charges: armed bank robberies; failure to notify the United States Probation Office (USPO) of criminal involvement; association with persons having criminal record/engaged in criminal activity; use of dangerous and habit forming drugs; violation of special condition; and unauthorized possession of firearm. (Id. Ex. 6)  That letter also advised Crosby that three adverse witnesses would be

2

subpoenaed to appear at the revocation hearing, namely, Glenn Graves, Federal Bureau of Investigation (FBI), Rodney Scott, and Detective Sergeant George Cunningham. (Id.) Additionally, under cover of that letter Crosby was provided with copies of the warrant dated August 24, 1993, warrant application dated August 24, 1993, the supplement dated 10/5/93, the preliminary Interview Summary report dated 9/3/93, and the probation officer's 8/10/93 letter with the supporting FBI affidavit and PharmChem lab reports. (Id.)

A local revocation hearing, at which Crosby was represented by counsel, was held on December 1, 1993. (Id. Ex. 7) Although Crosby had not requested any witnesses, the Commission called FBI Agent Graves, U.S. Probation Officer Walter Dent, and Rodney Scott as adverse witnesses. (Id.) During the hearing Crosby admitted to the charges of drug use and possession of a firearm but denied all other charges. Testimony from FBI Agent Graves indicated that during April through July 1993 he investigated a series of bank robberies which were all committed by three black males with ski masks, one of whom would count the time out loud. (Id.) According to Graves in May, 1993 he was advised by an informant that Crosby had participated in these robberies with two other persons he had been incarcerated with. (Id.) Following a robbery on July 16, 1993, two males were arrested, Rodney Scott (aka Yaqub Shaka) and Tony Wilder. (Id.) Scott implicated himself in three bank robberies in Maryland and also stated that Crosby and Wilder were participants in the robbery which took place on 4/26/93 at the

3

Maryland Permanent and Trust Company. (Id.)  Additionally, Graves
testified that during a consent search of Wilder's residence papers
were uncovered which contained the phone number of the place where
Crosby was residing at that time.  (Id.)  Agent Graves also
testified that a video of another bank robbery "showed a person
similar to Crosby carrying a revolver," and that an informant had
informed the FBI that Crosby had admitted his participation in a
bank robbery prior to the arrests of Scott and Wilder to people
close to him. (Id.)

The Commission also heard from Scott, who "... indicated he
had known the subject [Crosby] for over 12 years.  He indicated
that he was confined with subject and since he had been on parole
he had contact with Crosby about two times a week.  He indicated
that subject was involved in a robbery with him on 4/26/93."  (Id.)
The hearing examiner concluded that Crosby had committed the bank
robbery as well as the other offenses charged and recommended that
his parole be revoked with credit for time spent from 2/3/93
through 8/31/93, and that he continue to a presumptive parole after
service of 70 months (7/1/99) with the special drug aftercare
condition.  (Id.)

On December 16, 1993, the Commission issued a Notice of
Action.  (Id. Ex. 8.)  The Notice indicated that the Commission had
found as a fact that Crosby had violated the conditions of his
parole as charged based upon the testimony of Agent Graves, Scott
and the documentation submitted by the U.S. Probation officer dated

4

revoked, that he be credited with the time spent on parole form the
time of his release until August 31, 1993, and that he continue to
a presumptive parole after service of 120 months (September 1,
2003) with the special aftercare drug condition. (Id.) In support
of its decision to require service of 120 months, an amount above
Crosby's guideline range of 60-72 months, the Commission stated as
follows:

> Your parole violation behavior has been rated
> as new criminal conduct of category five
> severity because it involved bank robbery.
> Your new salient factor score is 3. You have
> been in federal confinement as a result of your
> violation behavior for a total of 3 months.
> Guidelines established by the Commission
> indicate a customary range of 60-72 months to
> be served before release. After review of all
> relevant factors and information presented, a
> decision above the guidelines appears warranted
> because you are a more serious risk than
> indicated by your salient factor score in that
> you have a history of assaultive behavior as
> evidenced by conviction for assault with intent
> to rob (1973); Bank Robbery (1978); and Bank
> Robbery (1986). You were on parole for
> approximately two months when you became
> involved in a new robbery offense. When
> apprehended by the U.S. Marshals you were found
> to be in possession of a handgun.

(Id.)

Crosby appealed this decision to the National Appeals Board
(Appeals Board) on the ground that "... there was insufficient
evidence to support the findings that [he] robbed a bank on April
26, 1993, associated with a person who has a criminal record, and
possessed a firearm without proper authorization." (Id. Ex. 9.)
On July 27, 1994, the Appeals Board issue a Notice of Action on

5

Appeal affirming the Commission's decision.  (Id.)  A statutory
interim hearing was held on December 5, 1995, following which the
Commission issued a Notice of Action dated January 18, 1996
indicating no change in the previous determination that Crosby
serve to a presumptive parole date of 9/1/2003.  (Id. Ex. 10-11.)
This decision was also appealed to the Appeals Board, which by
Notice of Acton on Appeal dated November 1, 1996, indicated its
affirmance of the interim decision as no new information had been
provided which warranted any change since the initial decision.
(Id. Ex. 12.)

Subsequently, by letter dated May 28, 1997, Crosby requested
that his case be reopened pursuant to 28 C.F.R. § 2.28 on the basis
of newly discovered evidence.  (Id. Ex. 15)  Specifically, he
contended that since his initial revocation hearing Scott had
recanted his testimony concerning Crosby's involvement in the bank
robbery of April 26, 1993 and attached Scott's affidavit so
stating.  (Id. Scott Aff.)  Additionally, also attached to the
letter was an affidavit executed by Tony Wilder, who had himself
been arrested and convicted of bank robbery, which stated that he
had plead guilty to bank robbery based on the potential
incriminating testimony of Scott, that he was aware Scott had
implicated Crosby in the bank robbery along with Wilder but that
Crosby "... was not involved in any robberies in which Mr. Scott
alleges." (Id. Wilder Aff.)

A second statutory interim hearing was held on December 1,

6

1997.  (Id. Ex. 13)  The hearing summary indicates that Crosby was
represented at this proceeding by Richard Whitmire, a Public Health
Service employee detailed to the BOP at USP-Lewisburg, and that
three institutional misconducts for drug use, to which Crosby plead
guilty, were considered.  (Id.)  A Notice of Action dated December
22, 1997 was issued which advised Crosby that the Commission had
found that he committed the three drug related violations,
rescinded his presumptive parole date of 9/1/2003 and ordered him
to continue to a presumptive parole date of 8/31/2004, requiring
service of twelve additional months.  (Id.)

     Crosby filed the instant petition seeking either an
evidentiary hearing on the merits of his innocence in light of the
affidavits of Scott and Wilder, copies of which he attached to his
petition, or his immediate release.  (Doc. 1, pet. ¶ 9, Attach. at
5.)

     The response to the petition indicates that "the record does
not definitively demonstrate" that Crosby's May 28, 1997 request
for reopening was reviewed and may have been inadvertently placed
in his file without any review.  (Id., Resp. at 5.)  Accordingly,
when the Commission's attention was directed to that request by the
initiation of the instant action, an expedited review was
conducted.  (Id. Ex. 16)  Upon review, it was determined that the
Scott affidavit did not warrant the reopening of Crosby's case
because "... the affidavit lacks credibility... ."  (Id.)
Specially, the reasons given for this determination were, in part,

as follows:

> My view is that the affidavit lacks
> credibility, because Scott claims he was only
> saying what he thought the examiner wanted to
> hear, but he had also admitted to the FBI his
> participation in the April 26 robbery, and had
> told the FBI that Crosby had participated in
> that robbery.  In addition, other evidence
> links Crosby to Scott and Wilder (the third
> robber), specifically a piece of paper found
> during a search of Wilder's home with Crosby's
> phone number on it, and the information
> provided by an FBI informant testified to by
> the FBI agent) that Crosby had participated in
> the robberies with persons he had been
> incarcerated with.  (Crosby had been
> incarcerated with Scott.)  I therefore
> recommend against reopening.

(Id.)

## Discussion

The United States Court of Appeals for the Third Circuit has

previously recognized that the Commission has "broad discretion.

The district court may not substitute its judgment for that of the

[Commission], and, therefore, the scope of its review is very

limited."  Zannino v. Arnold, 531 F.2d 687, 691 (3d Cir. 1976).

The district court's standard of review is limited to an abuse of

discretion.  Greene v. U.S. Parole Comm'n., 749 F. Supp. 650, 653

(M.D. Pa. 1990):

> It is well-established that a federal
> district court's review of a Parole
> Commission's decision is restricted
> to an `abuse of discretion' standard-
> -determining whether there exists a
> rational basis in the record for the
> Commission's action.  Campbell v.
> U.S. Parole Comm'n, 704 F.2d 106,
> 109-10 (3d Cir. 1983)(quoting Zannino
> v. Arnold, 531 F.2d 687, 691 (3d Cir.

> 1976)("Our inquiry in reviewing a
> Parole Commission decision `is only
> whether there is a rational basis in
> the record for the Board's
> conclusions embodied in its statement
> of reasons'")...

In reaching its decision, the Commission may rely on hearsay
evidence.  Zannino, 531 F.2d at 692.  A later decision by the Third
Circuit similarly concluded: "To calculate the parole eligibility
date of prisoners, the Commission must consider all relevant and
reasonably available information."  Bridge, 981 F.2d at 104.
Further, credibility determinations as well as the evaluation of
evidence are functions within the Commission's discretion.  Roberts
v. Corrothers, 812 F.2d 1173, 1179 (9th Cir. 1987)("... credibility
of evidence is just the sort of judgment that is absolutely
committed to the discretion of the Parole Commission").

Furthermore, when the Commission issues any rulings, it "must
reveal reasoning, and not simply present conclusions, at least
where the reasoning is not apparent from the facts of the case."
Marshall v. Lansing, 839 F.2d 933, 943 (3d Cir. 1988) (original
emphasis); see also Greene, supra.  The court added that "Congress
has required the Commission to furnish a statement of reasons to
the prisoner so that he can receive 'an understandable explanation
of his parole status.'"  Marshall, 839 F.2d at 942 (citations
omitted).

Crosby asserts that he is entitled to relief on the ground
that his "PAROLE REVOKED BASED ON FABRICATED INFORMATION IN

9

VIOLATION OF PETITIONER'S FIFTH AMENDMENT."[1]   (Id. ¶ 9.)   He relies

---

[1]   On November 20, 1998, Crosby submitted a document entitled "Petitioner's Amendment And Memorandum Of Law In Support Of Petition For Writ Of Habeas Corpus To Address The Question Of Jurisdiction Pursuant To The Sentencing Reform Act Of 1984, Section 235(b)(4), Public Law 98-473, effective Nov. 1, 1987" (Doc. 23). It appears that it is Crosby's contention that the U.S. Parole Commission is barred as a matter of law from exercising jurisdiction over his case in light of § 235(b)(4) because he was released on parole in February, 1993.  Crosby's position is not well taken and will be denied without unnecessary elaboration.

Although the Sentencing Reform Act of 1984 (SRA), to which Crosby refers, abolishes the Parole Commission and repeals most of the pre-existing statutory framework governing parole for federal prisoners, 18 U.S.C. §§ 4201-4218, it contains a saving or transition provision, which has twice been amended and currently keeps the Parole Commission and the federal parole statutes in effect for those sentenced prior to the SRA's effective date. Walden v. U.S. Parole Comm'n., 114 F.3d 1136, 1138-1139 (11th Cir. 1997):

> Section 235 of the Act [SRA], however, `saves' the Parole Commission and the federal parole statutes for a period of time during which the transition to the new system will occur. Section 235(b)(1) provides that 18 U.S.C. Chapter 311, §§ 4201-4218, which creates the Parole Commission and contains the parole law, `remains in effect for five years after the effective date [of the Act]'. 98 Stat. at 2027, 2032-33.
>
> . . .
>
> The original five year transition period would have expired on October 31, 1992.  This section of the SRA has been amended twice.  In 1990, the five-year transition period was extended to ten years, Pub.L. 101-650, Title III, § 316, Dec. 1, 1990, 104 Stat. 5115 (1990); and in 1996, the ten-year period was extended to fifteen years.  Pub.L. 104-232, §§ 1-3 Oct. 2, 1996, 110 Stat. 3055 (1996).  Accordingly, the transition period does not now expire until October 31, 2002.
>
> At the end of this time, parole and the Parole Commission will cease to exist.  For those still subject to supervision on the day before

on the affidavit of Scott, which essentially recants his earlier testimony at the December 5, 1993 parole revocation hearing, as well as the affidavit of Wilder. Respondent contends that Crosby is not entitled to habeas corpus relief because the Commission's determination as to the credibility of witnesses is not subject to judicial review. (Doc. 18, Resp. at 6-7.) In his reply, Crosby argues that the Commission's decision is based on insufficient evidence of guilt for crimes he was never charged with or convicted of. (Doc. 21, Reply at 4-5.) Additionally he contends that the Commission's decision to go above the guidelines constituted double counting, using his prior offenses to first determine the guideline range and then again as aggravating factors to justify going outside that range. (Id. at 6.)

Following a careful review of the record before it, the court is of the view that the Commission's decision should not be disturbed as there is a rational basis in the record to support it. The original determination that Crosby committed the offense of bank robbery was supported by the testimony of Agent Graves that he

---

the Parole Commission ceases to exist, Section 235(b)(4) provides that they remain subject to all then-repealed parole laws until their sentences expire. Since the Parole Commission will no longer exist, however, Section 235(b)(4) provides that the district court will assume the authority to revoke or modify the conditions of parole. (internal citations and footnotes omitted.)

Contrary to Crosby's contention, authority over his parole status has not yet been transferred a district court.

11

had been implicated in bank robberies in association with persons he had previously been incarcerated with by an informant, that a search of Wilder's residence had uncovered papers containing Crosby's current phone number, and the testimony of Scott that Crosby had participated with him and Wilder in the April, 1993 bank robbery.  That Crosby has never been criminally charged with the bank robbery does not prevent the Commission from considering that conduct and making its own determination as to his guilt or innocence.  See Maddox v. U.S. Parole Comm'n., 821 F.2d 997, 999 (5th Cir. 1987)("Specifically, the Commission may consider... allegations of criminal activity for which the prisoner has not even been charged." (internal citations omitted)); Woody v. Bogan, 832 F. Supp. 1109, 1113 (E.D. Mich. 1993).

Further, it appears that the Commission, although apparently not responding to Crosby's initial request for a reopening based upon what he contends was newly discovered evidence, did ultimately review this evidence.  The Commission assessed the credibility of Scott's recantation and found that there was ample additional evidence of Crosby's involvement in the bank robbery to make Scott's original testimony more credible than his subsequent retraction.  The court can discern no basis for not deferring to the Commission's discretion on this issue.  See Moore v. Dubois, 848 F.2d 1115, 1119 (10th Cir. 1988)(finding Parole Commission was entitled to determine whether original testimony or retraction was more credible), cert. denied 488 U.S. 1013 (1989).

12

Based upon a careful review of the record, the court is of the view that the Commission's decision has a rational basis in the record.  Accordingly, Crosby's petition will be denied.[2]  An appropriate order is attached.

YVETTE KANE
United States District Judge

Dated: February    9    , 1999

YK:mcs

---

[2]  Additionally, the court is of the view that Crosby's argument that he is entitled to relief based on the purported double counting by the Commission by the use of his prior convictions for determining his salient factor and to justify action above the guidelines is without merit.  See Thomas v. Brennan, 961 F.2d 612, 619 (7th Cir. 1992)("The Commission may weigh the particular nature of an offense as an aggravating factor even if the offense itself was accounted for in setting the guideline range.")  Moreover, there is no question that the Commission provided ample reason to support its decision in light of the repeated similar offenses and Crosby's parole status at the time of the conduct at issue herein.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KEITH CROSBY,

         Petitioner

    v.

PAGE TRUE,

         Respondent

FILED
HARRISBURG, PA

FEB 1 0 1999

MARY E. D'ANDREA, CLERK
Per _____
        Deputy Clerk

CIVIL NO. 1:CV-97-1112

(Judge Kane)

O R D E R

NOW, THIS     DAY OF FEBRUARY, 1999, in accordance with the accompanying memorandum, **IT IS HEREBY ORDERED THAT:**

    1.    The petition for writ of habeas corpus is **DENIED.**

    2.    All pending motions in this case are **DENIED** as moot.

    3.    The Clerk of Court is directed to close this case.

    4.    Based on the Court's conclusion herein, there is no basis for the issuance of a certificate of appealability.

_____
YVETTE KANE
United States District Court

YK:mcs