IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KEITH CROSBY, | : |
| Petitioner | : CIVIL NO. 1:CV-00-2211 |
| v. | : (Judge Kane) |
| MICHAEL ZENK, | : |
| Respondent | : |

**FILED**
HARRISBURG
JAN 2 2 2003
MARY E. D'ANDREA, CLERK
Per_____
DEPUTY CLERK

## MEMORANDUM AND ORDER

In 1997, Keith Crosby, a federal prisoner, initiated an action for writ of habeas corpus, by a *pro se* petition, pursuant to the provisions of 28 U.S.C. §2241. His petition was ultimately dismissed by this Court. *See Crosby v. True*, Civil No. 1:CV-97-1112, slip op. (M.D. Pa. February 10, 1999) (Kane, J.). Mr. Crosby commenced this action on December 20, 2000, again seeking a writ of habeas corpus by a *pro se* petition pursuant to the provisions of 28 U.S.C. § 2241. Mr. Crosby ("Petitioner") is currently confined at the Allenwood Federal Correctional Institution ("FCI Allenwood") in White Deer, Pennsylvania. Petitioner has paid the required filing fee. Named as Respondent is Michael Zenk, Warden at FCI-Allenwood.

I. **Background**

In May, 1986, Petitioner was sentenced to a term of imprisonment of twenty-five (25) years for bank robbery and use of a firearm during a crime of violence. On February 2, 1993, the United States Parole Commission ("Commission") ordered him released on supervised parole until December 2, 2010. Subsequently, in a letter dated August 10, 1993, Petitioner's probation officer informed the Commission that Crosby had violated the conditions of his parole, and recommended that a violator's warrant for his arrest be issued. Specifically, the Commission was advised that Petitioner, who was subject to a drug aftercare condition of parole, had recently twice tested positive for drugs, failed to make six drug treatment appointments, and was implicated, according to information obtained by the Federal Bureau of Investigation ("FBI"), in a number of bank robberies between April and July, 1993.

As a result, Petitioner was charged with violating the conditions of his parole as follows: committing armed bank robbery; failing to notify his probation officer of his criminal involvement; associating with persons having a criminal record and/or engaged in criminal activity; using dangerous and habit forming drugs; and failing to keep scheduled appointments required pursuant to his special parole condition of drug aftercare. He was later charged with the additional violation of unauthorized possession of a firearm.

2

Following Crosby's arrest, he was given a preliminary interview on September 3, 1993, during which he admitted to the drug and special aftercare program violations, but denied all other charges. In a letter dated October 5, 1993, he was notified that probable cause had been found on the following charges: armed bank robberies; failure to notify the United States Probation Office of criminal involvement; association with persons having criminal record/engaged in criminal activity; use of dangerous and habit forming drugs; violation of special condition; and unauthorized possession of firearm. The letter also advised Petitioner that three adverse witnesses would be subpoenaed to appear at the revocation hearing, namely, Rodney Scott, FBI Agent Glenn Graves, and Detective Sergeant George Cunningham. Additionally, Petitioner was provided with copies of the warrant dated August 24, 1993, warrant application dated August 24, 1993, the supplement dated October 5, 1993, the preliminary Interview Summary report dated September 3, 1993, and the probation officer's August 10, 1993 letter with the supporting FBI affidavit and PharmChem lab reports.

A local revocation hearing, at which Crosby was represented by counsel, was held on December 1, 1993. Crosby had not requested any witnesses for the hearing, and the Commission called FBI Agent Graves, U.S. Probation Officer Walter Dent, and Rodney Scott as adverse witnesses. During the hearing, Crosby admitted to the

charges of drug use and possession of a firearm, but denied all other charges. Testimony from FBI Agent Graves indicated that during April through July, 1993, he investigated a series of bank robberies which were all committed by three black males with ski masks, one of whom would count the time out loud. According to Graves, in May, 1993 he was advised by an informant that Crosby had participated in these robberies with two other persons with whom he had been incarcerated.

Following a robbery on July 16, 1993, two males were arrested, Rodney Scott (a/k/a Yaqub Shaka) and Tony Wilder. Rodney Scott implicated himself in three Maryland bank robberies, and also stated that Crosby and Wilder were participants in the robbery which took place on April 26, 1993 at the Maryland Permanent and Trust Company. Additionally, Graves testified that during a consent search of Wilder's residence, papers were uncovered which contained the phone number of Crosby's residence at the time. Agent Graves also stated that a video of another bank robbery showed a person similar to Crosby carrying a revolver, and that an informant had informed the FBI that Crosby had admitted his participation in a bank robbery to people close to him, prior to the arrests of Scott and Wilder.

The Commission also heard from Scott, who testified he had known Crosby for over twelve years. He indicated that he had been confined with Crosby and since he had been on parole he had contact with Crosby about two times a week.

4

He also stated that Crosby was involved in a robbery with him on April 26, 1993.

The hearing examiner concluded that Crosby had committed the bank robbery, as well as the other offenses charged, and recommended that his parole be revoked with credit for time spent from February 3, 1993 through August 31, 1993, and that he continue to a presumptive parole after service of 70 months with the special drug aftercare condition.

On December 16, 1993, the Commission issued a Notice of Action. The Notice indicated that the Commission had found as a fact that Crosby had violated the conditions of his parole, as charged, based upon the testimony of Agent Graves and Mr. Scott, and upon the documentation submitted by the U.S. Probation officer dated August 10, 1993. Further, the Notice ordered that Crosby's parole be revoked, that he be credited with the time spent on parole from the time of his release until August 31, 1993, and that he continue to a presumptive parole after service of 120 months (until September 1, 2003), with the special aftercare drug condition. In support of its decision to require service of 120 months, an amount above Crosby's guideline range of 60-72 months, the Commission stated that Crosby had a history of assaultive behavior (evidenced by convictions for assault with intent to rob (1973) and bank robberies (1978 and 1986)), he was on parole for approximately two months when he became involved in a new robbery offense, and

when he was arrested he had possession of a handgun.

Crosby appealed this decision to the National Appeals Board on the ground that there was insufficient evidence to support the findings that he robbed a bank on April 26, 1993, associated with a person who has a criminal record, and possessed a firearm without proper authorization. On July 27, 1994, the Appeals Board issued a Notice of Action on Appeal, affirming the Commission's decision.

A statutory interim hearing was held on December 5, 1995, following which the Commission issued a Notice of Action dated January 18, 1996 indicating no change in the previous determination that Crosby serve to a presumptive parole date of September 1, 2003. This decision was also appealed to the Appeals Board, which, by Notice of Action on Appeal dated November 1, 1996, affirmed the interim decision because no new information had been provided which warranted any change since the initial decision.

Subsequently, by letter dated May 28, 1997, Crosby requested that his case be reopened pursuant to 28 C.F.R. § 2.28 on the basis of newly discovered evidence. Specifically, he contended that since his initial revocation hearing, Rodney Scott had recanted his testimony concerning Crosby's involvement in the bank robbery of April 26, 1993. Crosby attached to the letter Scott's affidavit confirming and an affidavit executed by Tony Wilder, who had himself been arrested and convicted of

6

bank robbery, which stated that Wilder had pled guilty to bank robbery based on the potential incriminating testimony of Scott, that he was aware Scott had implicated Crosby in the bank robbery along with Wilder, but that Crosby was not involved in any robberies in which Mr. Scott alleged.

A second statutory interim hearing was held on December 1, 1997. The hearing summary indicates that Crosby was represented at this proceeding by Richard Whitmire, a Public Health Service employee detailed to the Bureau of Prisons at USP-Lewisburg, and that three institutional misconducts for drug use, to which Crosby pled guilty, were considered. A Notice of Action dated December 22, 1997 was issued, which advised Crosby that the Commission had found that he committed the three drug related violations, rescinded his presumptive parole date of September 1, 2003, and ordered him to continue to a presumptive parole date of August 31, 2004, requiring service of twelve additional months.

Crosby filed his initial petition pursuant to 28 U.S.C. §2241, seeking either (1) an evidentiary hearing on the merits of his innocence, in light of the affidavits of Scott and Wilder (copies of which he attached to his petition), or (2) his immediate release.

The response to the petition indicated that "the record does not definitively demonstrate" that Crosby's May 28, 1997 request for reopening was reviewed, and

may have been inadvertently placed in his file without any review. Accordingly, when the Commission's attention was directed to that request by the initiation of the § 2241 habeas action, an expedited review was conducted. Upon review, it was determined that the Scott affidavit did not warrant the reopening of Crosby's case. Specifically, the reasons given for this determination were, in part, that the affidavit lacks credibility and other evidence links Crosby to Scott and Wilder (specifically a piece of paper found during a search of Wilder's home with Crosby's phone number on it, and the information provided by an FBI informant that Crosby had participated in the robberies with persons he had been incarcerated with).

Petitioner filed a writ of habeas corpus with this Court, and on February 10, 1999, this Court issued a memorandum opinion sustaining the Commission's refusal to reopen the Petitioner's case. *See Crosby v. True*, No. 1:CV-97-1112, slip op. (M.D. Pa. February 10, 1999) (Kane, J.).

The Petitioner has now initiated the present action, seeking relief for violation of his due process rights by denial of a jury trial and by application of an incorrect burden of proof. In response, the Respondent argues that the same issues were raised and denied on the merits in this Petitioner's prior §2241 petition. Consequently, Respondent requests this Court to deny relief and dismiss the present action.

## II. Discussion

This action is Mr. Crosby's second petition for habeas relief under §2241. Habeas corpus petitions brought under § 2241 are subject to the Rules Governing § 2254 cases in the United States District Courts, 28 U.S.C. foll. § 2254 (1977) (applicable to § 2241 petitions under Rule 1(b)). Under Rule 9 of the Rules governing habeas cases, "[a] second or successive petition may be dismissed if the judge finds that it fails to allege new or different grounds for relief and the prior determination was on the merits or, if new and different grounds are alleged, the judge finds that the failure of the petitioner to assert those grounds in a prior petition constituted an abuse of the writ."

Initially, it appears Petitioner has failed to allege new grounds for relief. In both his original and current petitions, Mr. Crosby argues that the revocation of his parole based on an allegedly fabricated account of criminal conduct violates his Constitutional rights. Although these issues were presented in the first petition, and previously addressed on the merits by this Court, Mr. Crosby advances a new argument in his current petition. Specifically, Mr. Crosby argues that *Apprendi v. New Jersey*, 530 U.S. 466 (2000), supports his claim that revocation of parole, based on an accusation of criminal activity without a jury trial, violates the Due Process guarantees of the United States Constitution. Since this new case law has only come

to the petitioner's attention after the prior dismissal, this Court will address the new case law submitted by Petitioner.

Citing *Apprendi v. New Jersey*, 530 U.S. 466 (2000), Petitioner argues that "the Due Process Clause of the United States Constitution requires that a finding of guilty to bank robbery upon which his parole violation sentence was based must be proved to a jury beyond a reasonable doubt[,]" and not, as here, by the Parole Commission on a preponderance of evidence. (Doc. 1, Memo. in support at 12-13). Petitioner's reliance on *Apprendi* is misplaced. *Apprendi* held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. However, *Apprendi* dealt with the sentencing phase of a criminal prosecution, not with a parole revocation. There is no *Apprendi* issue where, as here, a defendant's sentence on any count is equal to or less than the lowest maximum sentence authorized by the relevant statute. *United States v. Williams*, 235 F.3d 858, 862 (3d Cir. 2000); *see also United States v. Cepero*, 224 F.3d 256, 267 n.5 (3d Cir. 2000) (en banc) ("Because application of the Sentencing Guidelines in this case does not implicate a fact that would increase the penalty of a crime beyond the statutory maximum, the teachings of *Apprendi* . . . are not relevant here ."). The Petitioner is not challenging the original sentencing for his crime in

10

May, 1986. At issue here is a determination by the Parole Board on revocation of this Petitioner's parole status under the sentence he serves for his prior conviction. The due process requirements in the Parole revocation context differ from those of a criminal prosecution.

The due process requirements for a parole revocation were set forth in *Morrissey v. Brewer*:

> [T]he revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations. . . . Revocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions.

*Morrissey v. Brewer*, 408 U.S. 471, 480 (1972). In *Morrissey*, the Supreme Court indicated that the "State has an overwhelming interest in being able to return the individual to imprisonment without the burden of a new adversary criminal trial if in fact he has failed to abide by the conditions of his parole." *Id.* at 483.

Although the Supreme Court recognized that the State is not required to provide a new adversary criminal trial for parole revocation hearings, these hearings do afford the Petitioner certain due process protections. These protections include:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e)

11

a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

*Morrissey*, 408 U.S. at 489. Petitioner has failed to establish that he was denied any of these Due Process protections.

Ultimately, Petitioner is challenging the factual conclusions of the Parole Commission. The Parole Commission has broad discretion and "[t]he district court may not substitute its judgment for that of the [Commission], and, therefore, the scope of its review is very limited." *Zannino v. Arnold*, 531 F.2d 687, 691 (3d Cir. 1976). The Commission's decision should not be disturbed as it is supported by a rational basis in the record to support it. The Commission doubted the credibility of Scott's recantation when it decided to revoke Mr. Crosby's parole. There is no basis for upsetting the Commission's determination on this issue. *See Moore v. Dubois*, 848 F.2d 1115, 1119 (10th Cir. 1988) (finding Parole Commission was entitled to determine whether original testimony or retraction was more credible). Accordingly, Crosby's petition will be denied. An appropriate order is attached.

                                               YVETTE KANE
                                               United States District Judge

Dated: January    , 2003

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KEITH CROSBY,   :
:
    Petitioner   : CIVIL NO. 1:CV-00-2211
:
v.   : (Judge Kane)
:
MICHAEL ZENK,   :
:
    Respondent   :

## ORDER

NOW, THEREFORE, THIS 22nd DAY OF JANUARY, 2003, for the reasons set forth in the foregoing Memorandum, **IT IS HEREBY ORDERED THAT:**

1. The petition for writ of habeas corpus is **DENIED**.

2. The Clerk of Court is directed to close this case.

3. Based on the Court's conclusion herein, there is no basis for the issuance of a certificate of appealability.

                                              /s/ Yvette Kane
                                              YVETTE KANE
                                              United States District Judge

YK:kah